UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **PIERCE MORGAN, et al.,** | : | Civil Action No. 06-1080 (JAP) |
| | : | (Consolidated) |
| Plaintiffs, | : | |
| | : | |
| v. | : | MEMORANDUM OPINION |
| | : | |
| **FORD MOTOR COMPANY, et al.,** | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**HUGHES, U.S.M.J.**

    This matter is before the Court upon the Motion of Defendants Ford Motor Company, Ford International Services, Inc., Ringwood Realty Corporation, Woodward-Clyde Consultants, URS Corporation, URS Group, Inc., URS Greiner Woodward-Clyde, Inc., URS Woodward-Clyde Consultants, Inc., URS Greiner Woodward-Clyde International Americas, Inc., and BFI Waste Systems of New Jersey, Inc. ("Defendants") for entry of a *Lone Pine* Case Management Order. In brief, a *Lone Pine* Order requires that a plaintiff substantiate his cause of action before embarking on a costly lawsuit with numerous defendants and attorneys. Plaintiffs, in consolidated cases, with over seven hundred individuals, oppose the motion and filed a Cross-Motion for the entry of a Case Management Order pursuant to Rule 16(c)(12) of the Federal Rules of Civil Procedure that conforms to controlling Third Circuit authority.

    This mass toxic tort litigation involves alleged personal injury and property damage resulting from Defendants' dumping of hazardous materials at the Ringwood Mines Landfill Site. Defendants seek an order requiring each Plaintiff to specify his or her alleged injuries with precision and produce basic facts substantiating the causes of such injuries through various

1

affidavits before any other discovery occurs. The Court reviewed the written submissions of the parties and conducted oral argument on May 15, 2007. For the reasons that follow, Defendants' Motion for Entry of a *Lone Pine* Case Management Order is denied and Plaintiffs' Cross-Motion for entry of a Case Management Order pursuant to Rule 16(c)(12) is granted in part and denied in part.

I.  BACKGROUND AND PROCEDURAL HISTORY

A.  **Factual Background and Procedural History**

The Ringwood Mines Landfill Site ("Site") is an approximate 900-acre area located in the Borough of Ringwood in Passaic County, New Jersey. (Pls.' Compl. at ¶ 44). The Site is part of the historic homeland of the Ramapough Mountain Indian Tribe. Id. at ¶ 45. The Site also consists of disposal areas, including open pits, dumps, landfills, abandoned mine shafts, all of which were used for the disposal of toxic and hazardous materials, some of which was produced by Defendants Ford Motor Company ("FMC") and Ford International Services, Inc. ("FISI"). Id. at ¶ 46. On January 7, 1965, Defendants Ringwood Realty Corp. ("RRC"), FMC, and FISI purchased the Site. Id. at ¶¶ 48-50. Plaintiffs allege in their complaint that beginning in 1965, Defendants RRC, FMC, FISI, I.S.A. in New Jersey, Inc. ("ISA"), Arrow Metals, Inc., and Arrow Group Industries, Inc., were responsible for releasing toxic and hazardous waste from the Mahwah assembly plant into mine pits and other areas on the Site in violation of existing laws. Id. at ¶¶ 54-61.

Plaintiffs also allege that in the late 1960s, Defendants began donating or selling land, known by them to be contaminated, to the Borough of Ringwood, the Ringwood Solid Waste Management Authority, and residential developers and builders who sold or built homes thereon

for Plaintiffs and their predecessors in title.  Id. at ¶¶ 78-80.  Beginning in 1982, Defendants Woodward-Clyde Consultants, URS Corp., URS Group, Inc., URS Greiner Woodward-Clyde International-Americas, Inc., URS Greiner Woodward-Clyde Consultants, Inc., and URS Greiner Woodward-Clyde, Inc. entered into agreements with Defendant FMC and/or FISI to (1) determine the extent of contamination on and off the Site and (2) remove all toxic and hazardous waste from the Site and surrounding lands.  Id. at ¶ 81.

In 1987 and 1988, after the Site had been designated a hazardous waste Superfund Site by the Environmental Protection Agency ("EPA"), Defendants FMC and FISI removed approximately 7,000 cubic yards of paint sludge from the Site which was located close to the surface.  Id. at ¶ 88.  On September 21, 2005, Defendant FMC and the EPA entered into a consent order in which FMC conceded that it was responsible for contamination of the Site.  Id. at ¶ 91.  On December 13, 2005, Plaintiffs were advised by public agencies that certain residences and properties were contaminated with toxic and hazardous substances released at the Site.  Id. at ¶ 83.  Plaintiffs contend that Defendants not only failed to warn residents about the toxins released, but also failed to take appropriate action to remediate the Site.  Id. at ¶ 94.  As a result, Plaintiffs contend that they were repeatedly exposed to toxins and contaminants through dermal absorption, inhalation and/or ingestion, skin contact, eye contact, consumption, and use of contaminated water.  Id. at ¶ 93.

On January 18, 2006, Plaintiffs filed Complaints in the Superior Court of New Jersey, Passaic County against FMC, RRC, FISI, ISA, J.I. Kislak, Co., Arrow Metals, Inc., Arrow Group Industries, Inc., Woodward-Clyde Consultants, URS Corporation, URS Group, Inc., URS Greiner Woodward-Clyde, Inc., URS Greiner Woodward-Clyde Consultants, Inc., URS Greiner

3

Woodward-Clyde International-Americas, Inc., and a number of fictitious companies and individuals.  (See Dkt. no. 06-1080, entry no. 1).  Plaintiffs' Complaints alleged the following Counts:  Count One - Intentional Fraudulent Concealment; Count Two - Constructive Fraud (Negligent Fraudulent Concealment); Count Three - Negligence; Count Four - Common Law Strict Liability; Count Five - Common Law Trespass; Count Six - Common Law Private Nuisance; Count Seven - Battery; Count Eight - Violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq.; Count Nine - Unjust Enrichment; Count Ten - Negligent Misrepresentation; Count Eleven - Per Quod Claims; Count Twelve - Willful and Wanton Misconduct; and Count Thirteen - Civil Conspiracy.  Id.

On March 9, 2006, Defendants FMC and FISI removed the action from the Superior Court of New Jersey, Passaic County to this Court.  Id.  In April 2006, Plaintiffs' forty-four individual cases were consolidated for all purposes.  (See Dkt. no. 06-1080, entry no. 11).  On April 10, 2006, Plaintiffs Dromique Mann, Lillian Milligan, Christopher Stonaker, Leo Morgan, Lydia Morgan, Meganne Morgan, Mia Morgan, Renee Morgan, Pierce Morgan, Rochelle Morgan, James Eckman, and Lisa Eckman filed a motion to remand the matter to the Superior Court of New Jersey, Passaic County.  (See Dkt. no. 06-1080, entry no. 12).  The motion to remand was denied.  (See Dkt. no. 06-1080, entry no. 34).  Subsequently, on January 25, 2007, the Court denied a motion by Plaintiffs to certify the Court's decision denying the motion to remand for immediate interlocutory appeal.  (See Dkt. no. 06-1080, entry no. 94).

Plaintiffs filed an Amended Complaint in August 2006, including as Defendants BFI Waste Systems of New Jersey, Inc., Browning-Ferris Industries of South Jersey, Inc., and Round Lake Sanitation Corporation.  (See Dkt. no. 06-1080, entry no. 40).  Defendants FMC, RRC, and

FISI then filed a motion to dismiss the Amended Complaint in part on August 10, 2006. (See Dkt. no. 06-1080, entry no. 49). Defendants Woodward-Clyde Consultants, URS Corporation, URS Group, Inc., URS Greiner Woodward-Clyde, Inc., URS Greiner Woodward-Clyde International-Americas, Inc., URS Greiner Woodward-Clyde Consultants, Inc. also filed a motion to dismiss the Amended Complaint in August 2006. (See Dkt. no. 06-1080, entry no. 50). Subsequently, Defendant BFI Waste Systems of New Jersey, Inc. also filed a motion to dismiss in part. (See Dkt. no. 06-1080, entry no. 62).

In December 2006, Plaintiffs filed a Second Amended Complaint adding the Borough of Ringwood and Ringwood Solid Waste Management Authority as Defendants. (See Dkt. no. 06-1080, entry no. 83). Plaintiffs' counsel then filed a motion to withdraw as attorney for fifty-four specified plaintiffs. (See Dkt. no. 06-1080, entry no. 96). Defendants FMC, FISI, and RRC advised the Court that they did not take any position on the motion to withdraw and that they would not file opposition to the motion. (See Dkt. no. 06-1080, entry no. 108). The Court granted the motion to withdraw on March 5, 2007. Id.

Before the motion to withdraw was decided, the Court granted in part and denied in part Defendants' motions to dismiss. (See Dkt. no. 06-1080, entry no. 99). The Court held that (1) Count Two (Negligent Fraudulent Concealment) was dismissed with prejudice against all defendants, (2) Counts Five (Trespass), Count Six (Nuisance), and Count Seven (Battery) applied only to the Ford Defendants and were dismissed with prejudice as to all other Defendants, (3) Plaintiffs' per quod damages claim (Count Eleven) was dismissed in part, (4) Counts Eight (New Jersey Consumer Fraud Act) and Nine (Unjust Enrichment) were dismissed as to the Ford Defendants with prejudice, (5) the Ford Defendants' motion to dismiss Counts

5

One (Intentional Fraudulent Concealment), Ten (Negligent Misrepresentation) and Thirteen (Civil Conspiracy) were denied without prejudice, (6) Counts One (Intentional Fraudulent Concealment), Eight (New Jersey Consumer Fraud Act), and Nine (Unjust Enrichment) were dismissed as against the URS Defendants with prejudice, (7) the URS Defendants' motion to dismiss Count Four (Common Law Strict Liability) was granted, (8) the URS Defendants' motion to dismiss Counts Ten (Negligent Misrepresentation), Twelve (Willful and Wanton Misconduct) and Thirteen (Civil Conspiracy) was denied without prejudice, (9) Counts I (Intentional Fraudulent Concealment), Nine (Unjust Enrichment), and Ten (Negligent Misrepresentation) were dismissed as against BFI with prejudice, and (10) BFI's motion to dismiss Count Thirteen (Civil Conspiracy) was denied without prejudice. (See Dkt. no. 06-1080, entry no. 99).

**B.     Defendants' Motion for a *Lone Pine* Order**

On March 5, 2007, the Court granted Defendants' application for leave to file a motion for a *Lone Pine* Case Management Order. (See Dkt. no. 06-1080, entry no. 104). Defendants filed the present motion for entry of a *Lone Pine* Case Management Order on March 9, 2007, requesting that the Court require each Plaintiff to specify his or her alleged injuries with precision and to produce basic facts substantiating the alleged causes of such injuries before initial disclosures are provided or any other discovery occurs. (See Dkt. no. 06-1080, entry no. 110).

Defendants contend that because Plaintiffs' complaint provides no specific information regarding injuries or illnesses allegedly suffered or property damage allegedly sustained by more than 700 plaintiffs, a *Lone Pine* order is appropriate. (Defs.' Mem. at 3). Specifically,

6

Defendants argue that "Plaintiffs should be required to produce evidence, including affidavits from physicians or other experts as appropriate, showing that they were in fact injured from exposure to chemicals, that there is a basis to conclude that the injury-causing chemicals to which they were exposed came from the Ringwood Mines Landfill Site, and that the exposure is attributable to the conduct of each of the Defendants." Id. at 10-11.

Plaintiffs oppose Defendants' motion for a *Lone Pine* order and filed a Cross-Motion for entry of a case management order that conforms to Third Circuit standards. (See Dkt. no. 06-1080, entry no. 132). Plaintiffs argue that the *Lone Pine* Order sought by Defendants would deny Plaintiffs any discovery while requiring them to "fund and exchange literally hundreds of expert reports." (Pl.'s Opp. Mem. at 16). Plaintiffs propose that the case would be better managed by means of phased proceedings with bellwether plaintiffs. Id. at 21.

## II.   DISCUSSION

Defendants contend that because Plaintiffs' complaint provides no specific information regarding injuries or illnesses allegedly suffered or property damage allegedly sustained, a *Lone Pine* order would streamline discovery and avoid wasteful litigation. (Defs.' Mem. at 3). Defendants further contend that Plaintiffs' complaint does not provide basic facts about individual plaintiffs. Id. at 10. Defendants assert that the Ringwood Mines Landfill Site was used as a general landfill for many decades and that Plaintiffs must show a connection between contaminants found on the site and the conduct of Defendants. Id. Specifically, Defendants argue that "Plaintiffs should be required to produce evidence, including affidavits from physicians or other experts as appropriate, showing that they were in fact injured from exposure to chemicals, that there is a basis to conclude that the injury-causing chemicals to which they

7

were exposed came from the Ringwood Mines Landfill Site, and that the exposure is attributable to the conduct of each of the Defendants." Id. at 10-11. Defendants contend that it is not unduly burdensome for Plaintiffs to produce this information before they are allowed to proceed with the case. Id. at 11.

Plaintiffs argue in opposition that pursuant to Federal Rule of Civil Procedure 8(a), the Complaint need be nothing more than "a short and plain statement of the claim showing that the pleader is entitled to relief." (Pl.'s Opp. Mem. at 12). Plaintiffs further argue that the *Lone Pine* Order sought by Defendants would deny Plaintiffs any discovery while requiring them to "fund and exchange literally hundreds of expert reports." Id. at 16. Plaintiffs also contend that Defendants' proposed *Lone Pine* order is intended (1) to force Plaintiffs' experts to make do with incomplete data so that their conclusions can then be assailed on that very ground, and (2) to enable Defendants to prepare their attack on Plaintiffs' experts while Plaintiffs learn nothing about Defendants' experts. Id. at 20.

Plaintiffs propose that the case would be better managed by means of "bellwether," "representative" or "test" plaintiffs. Id. at 21. Plaintiffs further propose a Case Management Order that includes the following three basic features: (1) a division of pre-trial proceedings into two phases - basic liability issues and dispositive motions followed by causation, damages, and affirmative defenses; (2) progression of Phase II in "waves," with a small number of plaintiffs followed by larger groups of plaintiffs; and (3) a program of disclosure in Phase I provided by Plaintiffs as to their personal injuries and property damage. Id. at 34-36.

Defendants argue in reply that a *Lone Pine* Order is not a ruling on the merits, but rather a case management tool requiring Plaintiffs to identify their specific claims and address

8

causation "as a starting point for the case." (Defs.' Reply Br. at 4-5). Defendants further argue that the evidence provided by Plaintiffs in response to the *Lone Pine* Order would only be preliminary evidence which could be amended or supplemented based upon information produced in discovery. Id. at 6-7. Defendants request that the Court require each Plaintiff to demonstrate that he or she has an injury that is causally related to the conduct of one or all of the Defendants before this case is permitted to proceed. Id. at 15.

A.   **Federal Rules of Civil Procedure 1 and 16(c)**

Pursuant to Federal Rule of Civil Procedure 1, the Rules "shall be construed to secure the just, speedy, and inexpensive determination of every action." FED. R. CIV. P. 1. Accordingly, "a court has 'great powers to control the preparation, processing and presentation of civil cases.'" Planned Parenthood of Central New Jersey v. Verniero, 22 F. Supp. 2d 331, 339 (D.N.J. 1998) (citing United States v. R.J. Reynolds Tobacco Co., 416 F. Supp. 316, 322 (D.N.J. 1976).

Federal Rule of Civil Procedure 16 governs case management and provides in relevant part:

> [T]he court may take appropriate action, with respect to . . . (6) the control and scheduling of discovery, including orders affecting disclosures and discovery pursuant to Rule 26 . . . (12) the need for adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems . . . (16) such other matters as may facilitate the just, speedy, and inexpensive disposition of the action.

FED. R. CIV. P. 16(c)(6), (12), and (16). Rule 16 affords district judges wide discretion over the management of discovery. Acuna, 200 F.3d at 340; Foster v. JLG Industries, Inc., 199 Fed. Appx. 90, 95 (3d Cir. 2006) (noting that "the district court has discretion to manage its caseload"). "[T]he Committee drafted the rule to expressly recognize that federal judges should

assert control over litigation from the very beginning to ensure, in part, that the 'action maintains its momentum.'" Chiropractic Alliance of New Jersey v. Parisi, 164 F.R.D. 618, 620 (D.N.J. 1996) (citations omitted). The Third Circuit Court of Appeals recognized that one purpose of Rule 16 is to "enhance the active case management by the judiciary." Id. (citing Newton v. A.C. & S., Inc., 918 F.2d 1121, 1126 (3d Cir. 1990)).

Although not binding on this Court, other courts have similarly noted the courts' power to fashion case management orders and structure discovery in ways that will enable cases to continue efficiently through the litigation process. See In re Zenith Elec. Corp., No. 13-04-00420, 2004 Tex. App. LEXIS 9333, at * 4 (Tex. App. Oct. 21, 2004) ("The scope of discovery is largely within the trial court's discretion."); Cottle v. Superior Court, 3 Cal. App. 4th 1367, 1377 (Cal. Ct. App. 1992) (noting that California courts "have fashioned new forms of procedures when required to deal with the rights of parties and to manage the caseload of the court"); Amoco Oil Co. v. Segall, 118 Ill. App. 3d 1002, 1012 (Ill. App. Ct. 1983) (stating that the court has "broad powers to supervise the discovery process"); Mistler v. Mancini, 111 Ill. App. 3d 228, 232 (Ill. App. Ct. 1982) ("The rules make it clear that discovery procedures were designed to be flexible and adaptable to the infinite variety of cases and circumstances appearing in the trial court."); In the Matter of Love Canal Actions, 547 N.Y.S.2d 174, 177 (N.Y. Sup. Ct. 1989) ("Inherent powers consist of all powers reasonably required to enable a court to perform efficiently its judicial functions and to make its lawful actions effective.").

Also, pursuant to Federal Rule of Civil Procedure Rule 26(f), "the parties must . . . confer . . . to make or arrange for the disclosures required by Rule 26(a)(1), . . . and to develop a proposed discovery plan that indicates the parties' views and proposals concerning:"

> (1) what changes should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement as to when disclosures under Rule 26(a)(1) were made or will be made;
> (2) the subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues. . . .

FED. R. CIV. P. 26(f)(1) and (2).

### B.   Bellwether Plaintiffs

In appropriate circumstances, bellwether or representative plaintiffs can be used as a case management tool. The United States Court of Appeals for the Fifth Circuit noted that "[t]he notion that the trial of some members of a large group of claimants may provide a basis for enhancing prospects of settlement or for resolving common issues or claims is a sound one that has achieved general acceptance by both bench and bar." In re Chevron U.S.A., Inc., 109 F.3d 1016, 1019 (5th Cir. 1997) (cited by Perez v. Wyeth Lab. Inc., 161 N.J. 1, 8 (1999) (noting the use of five bellwether plaintiffs out of fifty suing pharmaceutical distributors of Norplant); see also Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 140 (1972) (noting that the parties selected twelve bellwether plaintiffs from among the 85 for purposes of initial trial); Nutraquest, Inc. v. Northwestern Univ., No. 03-5869, 2004 U.S. Dist. LEXIS 29141, at * 5 (D.N.J. Nov. 17, 2004) (noting the use of four Court selected bellwether test cases to resolve liability and damages issues and "serve as a tool for evaluation and resolution of all other personal injury cases" against Defendants). Bellwether plaintiffs are not created pursuant to any formal rule, and the Court in Chevron cautioned that the sample must be representative to maintain the parties' due process rights. Id. at 1021.

Therefore, to ensure the usefulness of bellwether plaintiffs to the process and the parties' due process rights, representative plaintiffs must be chosen. MANUAL FOR COMPLEX

LITIGATION § 22.315 (4th ed. 2004). "To obtain the most representative cases from the available pool, a judge should . . . limit the selection to cases that the parties agree are typical of the mix of cases." Id. at § 22.315. The Court in Chevron suggested that "the sample must be a randomly selected one of sufficient size so as to achieve statistical significance to the desired level of confidence in the result obtained." Chevron, 109 F.3d at 1019. These test plaintiffs should enable the parties and the court to "determine the nature and strength of the claims, whether they can be fairly developed and litigated on a group basis[] and what range of values the cases may have if resolution is attempted on a group basis." MANUAL FOR COMPLEX LITIGATION § 22.315 (4th ed. 2004). The more representative the test plaintiffs, the more reliable the information about similar plaintiffs remaining in the case. Id.

C.     *Lone Pine* Case Management Order

Defendants in the present matter seek a pre-discovery *Lone Pine* Case Management Order, named for Lore v. Lone Pine Corp., No. L-33606-85 1986, N.J. Super. LEXIS 1626 (N.J. Super. Ct. 1986). A *Lone Pine* Order requires that a plaintiff substantiate his cause of action before embarking on a costly lawsuit with numerous defendants and attorneys. Lone Pine, 1986 N.J. Super. LEXIS 1626, at * 4.

In Lone Pine, plaintiffs filed suit against approximately 464 defendants alleging that the operator of a landfill and generators and haulers of toxic materials were liable for personal injury and property damage. Id. at *3. The Court had issued a Case Management Order directing plaintiffs to provide the following documentation: (1) Facts of each individual plaintiff's exposure to toxic materials from the landfill; (2) Reports of treating physicians and medical or other experts supporting plaintiffs' injuries and causation by materials from the landfill; (3) Each

12

plaintiff's address, tax block and lot number for the damaged property; and (4) Reports of real estate or other experts supporting plaintiffs' claim of decreased property value. Id. at *3-4.

*Lone Pine* orders "are designed to handle the complex issues and potential burdens on defendants and the court in mass tort litigation." Acuna, 200 F.3d at 340. However, they are not appropriate in all circumstances. Any discovery must not be one-sided. See Hines v. Consol. Rail Corp., 926 F.2d 262, 272 (3d Cir. 1991) (reversing summary judgment based in part on the district court's failure to "provide [plaintiff] with the opportunity to conduct discovery on [defendant's] expert and consequently the data and techniques that [defendant's] expert used"); In re Paoli R.R. Yard PCB Litig., 916 F.2d 829, 854-55 (3d Cir. 1990) (reversing summary judgment based in part on the skewing of discovery procedures in the defendants' favor).

Therefore, the parties must be given an opportunity to conduct discovery and contest the reasonableness of their adversary's experts. Defendants are not entitled to file what amounts to a summary judgment motion without first allowing the party opposing the motion a chance to conduct discovery. See Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 183 (3d Cir. 1997) (even though it appeared "from this limited record that [plaintiff] will have a difficult road to travel," it was improper to grant defendants summary judgment where plaintiff "was not given the opportunity to test her contention by discovery"); Dowling v. City of Philadelphia, 855 F.2d 136, 139 (3d Cir. 1988) ("The court is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery.").

### III.  ANALYSIS

Although the Case Management Order in Lone Pine required plaintiffs to produce basic information to support their claims of injury and property damage, there are at least two notable

13

ways in which the present matter is distinguishable from Lone Pine. First, in Lone Pine, the EPA reports indicated that there was no ground water contamination or transport of pollution by air, ground water or surface water which was in direct conflict with Plaintiffs' complaint. Lone Pine, 1986 N.J. Super. LEXIS 1626, at * 6. Here, the EPA added the Ringwood Mines Landfill Site to the National Priorities List, also known as the Superfund Site list, in September 1983. (See Pls.' Opp. Mem. at 7). This list consists of the worst known toxic sites in the country. Id. Further, in 1987 and 1988, Ford extracted approximately 7,000 cubic yards of sludge from the Site. Id. Although the EPA removed the Site from the Superfund Site list in November 1994, it re-listed the area on the list in September 2006 after additional deposits of paint sludge were discovered. Id. Further, Ford was party to a consent order taking responsibility for the contamination at the Site. (See Pls.' Compl. at ¶ 91).

Second, Lone Pine differs from the present matter in Plaintiffs' location in relation to the contaminated site. In Lone Pine, a number of Plaintiffs' properties were located miles from the landfill site. "One of the properties involved is 20 miles from Lone Pine at the end of the Metedeconk River, four properties are at the outlet of the Manasquan River in Point Pleasant, and two more are each two miles from the landfill in different directions." Lone Pine, 1986 N.J. Super. LEXIS 1626, at * 6. However, EPA reports indicated that the contamination was confined to the landfill and its immediate vicinity. Id. In the present matter, "there are 'approximately 900 people living within one mile of the site' and '[a]bout 200 of those individuals are Ramapough Mountain Indians living at 48 residences on the site.'" (Pls.' Opp. Mem. at 8). Further, it is not clear how much contamination is present on the site and at what

14

locations. Id. It is also important to note that whereas Lone Pine involved 464 defendants, the present matter involves over 700 Plaintiffs but only about 20 Defendants.

The Court finds that Plaintiffs are not required to prove a prima facie case without the benefit of any discovery from Defendants. Therefore, Plaintiffs must not be required to produce complete medical and real estate expert affidavits before any discovery, thereby giving Defendants an opportunity to attack the affidavits based on that justification for the lawsuit. Similar to Defendants, Plaintiffs must have an opportunity to contest the reasonableness of any experts relied upon by their adversary. Requiring Plaintiffs to produce affidavits would also be unnecessarily costly at this juncture of the case. However, Defendants are entitled to some specific information that supports Plaintiffs' claims and damages to allow this matter to move forward without wasteful, costly, or inefficient discovery. Accordingly, the Court will require a simple statement from each Plaintiff pursuant to Rule 26(a)(1) identifying the "nature and extent of injuries suffered." FED. R. CIV. P. 26(a)(1)(C). Counsel will agree to the form of such statement.

In addition, the Court finds that the use of bellwether plaintiffs will be helpful to the efficiency and management of this case pursuant to Federal Rules of Civil Procedure 1 and 16. This case is not a class action, but rather a number of consolidated cases against Defendants. The parties will have the responsibility of choosing which of the 661 remaining Plaintiffs will be designated as bellwether plaintiffs, keeping in mind the Fifth Circuit's caution that the more representative the bellwether plaintiffs, the more reliable the case management tool.

Therefore, mindful of Rule 1 and pursuant to the Court's discretion in managing its caseload, the Court will fashion a Rule 16 Case Management Order tailored to the specific

15

circumstances of this case. The Court will require Plaintiffs' counsel to initiate a Rule 26(f) conference within 30 days. During this conference, the parties will discuss the following Phases delineated by the Court. Phase I will include (1) completion of a Rule 26(a)(1) simple statement from all Plaintiffs regarding the "nature and extent of injuries suffered," their treating physicians, and medical authorizations, to be followed by (2) designation of five bellwether Plaintiffs, (3) discovery regarding causation as to the five bellwether Plaintiffs, (4) expert discovery as to the five bellwether Plaintiffs, and (5) dispositive motion practice as to the five bellwether Plaintiffs. If the bellwether Plaintiffs' claims survive summary judgement motions, plenary discovery regarding property damage, personal injury, and causation for the remaining Plaintiffs will be conducted in Phase II. Fact discovery regarding on-site contamination may commence immediately and may continue throughout Phases I and II.

At the Rule 26(f) conference, the parties' counsel will discuss and agree upon (1) the form of the Rule 26(a)(1) simple statement, (2) designation of the five bellwether Plaintiffs, and (3) timing of deadlines for the following: return of the Rule 26(a)(1) statements from Plaintiffs; the end of fact discovery for the bellwether Plaintiffs; Plaintiffs' and Defendants' expert reports for the five bellwether Plaintiffs; and dispositive motion practice for the five bellwether Plaintiffs. Following the Rule 26(f) meeting, counsel will submit a Joint Order no later than 30 days after the Rule 26(f) conference or will submit competing orders for the Court to resolve.

### III. <u>CONCLUSION</u>

For the reasons expressed here, the Court finds that entry of Defendants' proposed *Lone Pine* Case Management Order is not appropriate. The proposed order would require over 700 Plaintiffs to produce affidavits from qualified environmental experts and licensed physicians,

while Defendants were required to produce no discovery. Instead, based on the positions of the parties and the circumstances of this particular case, the Court finds that entry of a Case Management Order that provides for phased discovery is appropriate.

The Court will require Plaintiffs' counsel to initiate a Rule 26(f) meeting within 30 days of this Order during which the parties will discuss the following Phases delineated by the Court. Phase I will include the following: (a) Plaintiffs shall submit a Rule 26(a)(1) simple statement including the "nature and extent of injuries suffered," their treating physicians, and medical authorizations; (b) Five (5) bellwether Plaintiffs will be designated and discovery regarding causation will be conducted as to these Plaintiffs; (c) Expert discovery as to the five bellwether Plaintiffs; and (d) Dispositive motion practice as to the five bellwether Plaintiffs.

If the five (5) bellwether Plaintiffs' claims survive Summary Judgment Motions, plenary discovery will be conducted on property damage, personal injury, and causation for the remaining Plaintiffs in Phase II. During the Rule 26(f) meeting, Counsel will agree on (a) the form of the simple statement for all Plaintiffs, (b) the five (5) representative bellwether Plaintiffs, (c) the timing of deadlines for the following: (i) Return of the Rule 26(a)(1) statements from Plaintiffs, (ii) The end of fact discovery for the bellwether Plaintiffs, (iii) Plaintiffs' and Defendants' expert reports for the five bellwether Plaintiffs, (iv) Dispositive motion practice for the five bellwether Plaintiffs.

Following the Rule 26(f) meeting, Counsel will submit a Joint Order no later than 30 days after the 26(f) conference or will submit competing orders for the Court to resolve. Fact discovery regarding on-site contamination may commence immediately and may continue throughout Phases I and II. Therefore, Defendants' Motion for Entry of a *Lone Pine* Case

Management Order is denied and Plaintiffs' Cross-Motion for entry of a Case Management Order pursuant to Rule 16(c)(12) is granted in part and denied in part in accordance with this Memorandum Opinion.

An appropriate Order accompanies this Memorandum Opinion.

**Dated: May 17, 2007**